**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

| | |
|---|---|
| **MICHAEL L. MITCHELL,** )<br>)<br>    **Plaintiff,** )<br>)<br>**vs.** )<br>)<br>**CAROLYN W. COLVIN, Acting** )<br>**Commissioner of Social Security,** )<br>)<br>    **Defendant.** ) | **CASE NO. 4:15-CV-0690-SLB** |

**MEMORANDUM OPINION**

Plaintiff Michael L. Mitchell brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits [DIB]. After review of the record, the Commissioner's submission, and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

**I. PROCEDURAL HISTORY**

Mr. Mitchell filed an application for a period of disability and DIB on January 23, 2012, alleging a disability onset date of December 31, 2011. (*See* doc. 7-3 at R.11; *see also* doc. 7-6 at R.141.)[1] The application was denied initially on April 3, 2012. (Doc. 7-3 at R.11; doc. 7-5 at R.79.) Thereafter, Mr. Mitchell requested a hearing before an Administrative

---

[1]Reference to a document number, ("Doc.__"), refers to the number assigned to each document as it is filed in the court's record. References to page numbers in the Commissioner's record are set forth as ("R.__").

Law Judge [ALJ], (doc. 7-5 at R.84), which was held on August 21, 2013, (doc. 7-3 at R.31).

Following the hearing, the ALJ found that Mr. Mitchell was not disabled; therefore, he

denied Mr. Mitchell's applications for a period of disability and DIB on November 21, 2013.

(Doc. 7-3 at R.24.)

Mr. Mitchell asked the Appeals Council to review the ALJ's decision.  (*See id*. at

R.6.)  The Appeals Council denied the request for review, stating that it had "found no reason

under [its] rules to review the [ALJ's] decision." (*Id*. at 1.)  Therefore, "the [ALJ's] decision

is the final decision of the Commissioner of Social Security in [Mr. Mitchell's] case."  (*Id*.)

Mr. Mitchell filed an appeal in this court on April 24, 2015.  (Doc. 1.)

## II.  <u>STANDARD OF REVIEW</u>

In reviewing claims brought under the Social Security Act, this court's role is a

narrow one: "Our review of the Commissioner's decision is limited to an inquiry into

whether there is substantial evidence to support the findings of the Commissioner, and

whether the correct legal standards were applied."  *Wilson v. Barnhart*, 284 F.3d 1219, 1221

(11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).  The court

gives deference to factual findings.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir.

1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute [its]

judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to

determine if the decision reached is reasonable and supported by substantial evidence."

*Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*,

703 F.2d 1233, 1239 (11th Cir.1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted).

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius*, 936 F.2d at 1145. "No . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. <u>DISCUSSION</u>

### A. THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability and DIB. *See* 20 C.F.R. § 404.1520(a)(1)-(2); *see also Bowen v. City of New York,* 476 U.S. 467, 470 (1986). "[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy

exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

The specific steps in the evaluation process are as follows:

## 1. Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987). The regulations define "substantial gainful activity" as "work activity that is both substantial and gainful."[2] 20 C.F.R. § 404.1572. If the claimant is working and that work is substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or his age, education, and work experience. 20 C.F.R. § 404.1520(b). "Under the first step, the claimant has the burden to show that [he] is not currently engaged

---

[2]The regulations state:

(a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572.

in substantial gainful activity." *Reynolds-Buckley v. Commissioner of Social Sec.*, 457 Fed.

Appx. 862, 863 (2012).[3]

The ALJ found that Mr. Mitchell had not engaged in substantial gainful activity since

December 31, 2011, the alleged onset date.  (Doc. 7-3 at R.13.)

### 2. Severe Impairments

If the claimant is not engaged in substantial gainful activity,  the Commissioner must

next determine whether the claimant suffers from a severe impairment or combination of

impairments that significantly limits the claimant's physical or mental ability to do basic

work activities.  20 C.F.R. § 404.1520(a)(4)(ii), (c).  "[A] 'physical or mental impairment'

is an impairment that results from anatomical, physiological, or psychological abnormalities

which are demonstrable by medically acceptable clinical and laboratory diagnostic

techniques."  42 U.S.C. § 423(d)(3).  The regulations provide:  "[I]f you do not have any

impairment or combination of impairments which significantly limits your physical or mental

ability to do basic work activities, we will find that you do not have a severe impairment and

are, therefore, not disabled.  We will not consider your age, education, and work experience."

20 C.F.R. § 404.1520(c).  "An impairment can be considered as not severe only if it is a

slight abnormality which has such a minimal effect on the individual that it would not be

[3]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it.  ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***."  11th Cir. R. 36-2 (emphasis added).

expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a). A complainant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Brown*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. § 404.1523. A claimant has the burden to show that he has a severe impairment or combination of impairments. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Mr. Mitchell had "the following severe impairments:  status post bilateral bunionectomy; status post bilateral arthrodesis with subtalar joint implant; degenerative joint and disc conditions of C5-6, C6-7; old thoracic fractures; spondylolisthesis at L5, and mild scoliosis (20 C.F.R. 404.1520(c))."  (Doc. 7-3 at R.13.)  He also found that "there is medically determinable hypertension, tachycardia, hiatal hernia with reflux disease, and dysuria that are nonsevere and impose no more than minimal limitations at any point," and that Mr. Mitchell had a "history [of] depression and anxiety," which did "not affect his capacity for mental and physical work activity."  (*Id.* at R.16, R.17.)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets or is equivalent to any one of the listed impairments, which are impairments that are so severe as to prevent an individual with the described impairment from performing substantial gainful activity.   20 C.F.R.

§404.1520(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings]. If the claimant's impairment meets or equals an impairment in the Listings, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d).  The claimant has the burden of proving that his impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Mr. Mitchell did not have an impairment or combination of impairments that met or medically equaled one of the impairments in the Listings.  (Doc. 7-3 at R.17.)

### 4.  Residual Functional Capacity and Past Relevant Work

If the impairment or combination of impairments does not meet or equal the criteria of a Listing, the claimant must prove that his impairment or combination of impairments prevents him from performing his past relevant work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f).  At step four, the Commissioner "will first compare [her] assessment of [the claimant's] residual functional capacity [RFC] with the physical and mental demands of [the claimant's] past relevant work.  20 C.F.R. § 404.1560(b).  "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [him] to learn to do it.  20 C.F.R. § 404.1560(b)(1).  If the claimant is capable of performing his past relevant work, the Commissioner will find he is not disabled.  20 C.F.R. § 404.1560(e).  The claimant bears the burden of establishing that the impairment or

combination or impairments prevents him from performing past work. *Reynolds-Buckley*,

457 Fed. Appx. at 863.

The ALJ found that Mr. Mitchell could perform a limited range of light work; he

found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b)[4] except the claimant can sit up to three hours without limitation.  The claimant can sit at least six hours over the course of an eight-hour workday.  The claimant can stand and/or walk up to two hours without interruption and a total of six hours over the course of an eight-hour workday.  The claimant cannot walk on uneven terrain.  The claimant can frequently use his upper extremities for reaching in all directions, pushing, pulling, and handling.  He does not suffer any additional manipulative limitation.  The claimant can occasionally use his lower extremities for pushing, puffing, and the operation of foot controls.  The claimant cannot climb ladders, ropes, scaffolds or poles.  The claimant can climb stairs up to one-hour total over the course of an eight-hour workday.  The claimant can occasionally climb ramps.  The claimant can frequently stoop and balance.  The claimant can occasionally crouch and kneel.  The claimant cannot crawl.  The claimant can frequently work in wetness, humidity, and extreme heat.  The

---

[4]The regulations define "light work" as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

claimant cannot work in extreme cold.  The claimant suffers no pulmonary limitations.  The claimant cannot work at unprotected heights.  The claimant cannot work with operating hazardous machinery.  The claimant can occasionally work while subject to vibration.  The claimant can frequently operate motorized vehicles.

(Doc. 7-3 at R.17-18 [footnote added].)  Based on the RFC, the ALJ found that Mr. Mitchell could not perform his past relevant work as a correctional officer.  (*Id.* at R.22.)

### 5.  Other Work in the National Economy

If the claimant establishes that he is unable to perform his past relevant work, the Commissioner must show that the claimant – in light of his RFC, age, education, and work experience – is capable of performing other work that exists in substantial numbers in the national economy.  *Reynolds-Buckley*, 457 Fed. Appx. at 863; *see also* 20 C.F.R. §404.1560(c)(1).   The regulations provide:

> If we find that your [RFC] is not enough to enable you to do any of your past relevant work . . . , we will use the same [RFC] assessment we used to decide if you could do your past relevant work when we decide if you can adjust to any other work.  We will look at your ability to adjust to other work by considering your [RFC] and the vocational factors of age, education, and work experience, as appropriate in your case.  . . .  Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F.R. § 404.1560(c)(1).  If the claimant is not capable of performing such other work, the Commissioner must find the claimant is disabled.  20 C.F.R. § 404.1520(f).  If, however, the Commissioner finds that the claimant can perform other work, the claimant has the burden to prove he is not capable of performing such other work.

The ALJ found that Mr. Mitchell, who was born in 1962, was a "younger individual" on the alleged onset date and "closely approaching advanced age" on the date of his decision. (Doc. 7-3 at R.22-23.)  He had a high school education and some job training.  (*Id*. at R.23.)  The ALJ found that "[t]ransferability of job skills [was] not material to [his] determination of disability because using the Medical-Vocational Rules as a framework support[ed] a finding that the claimant [was] 'not disabled,' whether or not [Mr. Mitchell had] transferable job skills."  (*Id*. [citing SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2].)

Because the RFC was based on a limited range of light work, the ALJ consulted a vocational expert [VE].  (*Id*.)  The VE testified that an individual with Mr. Mitchell's RFC and vocational factors could perform jobs that exist in significant numbers in the national economy, including marker and assembler–electrical, and production line solderer[5]  (*Id*. at R.23, R.58-60.)   Based on this testimony, the ALJ found Mr. Mitchell could "mak[e] a successful adjustment to other work that exists in significant numbers in the national economy."  (*Id*. at R.24.)

Therefore, the ALJ found that Mr. Mitchell had "not been under a disability . . . from December 31, 2011, through the date of [his] decision," November 21, 2013.  (*Id*.)

---

[5]The transcript of the hearing indicates that the vocational expert testified that other work a person with Mr. Mitchell's RFC and vocational factors could perform included "production line ***sorter***, [DOT code] 813.684-022."  (Doc. 7-3 at R.60 [emphasis added].) However, DOT code 813.684-022 is the code for "***Solderer***, Production Line."  DICTIONARY OF OCCUPATIONAL TITLES, 813.684-022 (4th Ed., Rev. 1991)(emphasis added), available at: http://www.oalj.dol.gov/PUBLIC/ DOT/REFERENCES/DOT08A.HTM.

**B.  MR. MITCHELL'S APPEAL**

In his Complaint, Mr. Mitchell states:

The [ALJ] erred in finding no evidence of pinched nerves or back injury, contrary to neurologist report.  The [ALJ] found claimant had no limitation or impairments, relying upon Dr. Waldrop's records, addressing <u>ankles</u> only, not the body as a whole; contrary to records finding severe degenerative changes and reports of additional [physicians'] exhibits included in the record.

(Doc. 1 at 2 [emphasis in original].)  Mr. Mitchell did not file a brief in support of his claim or otherwise direct the court to the specific exhibits he alleges support his claims of error. In addition to addressing the two issues set forth in the Complaint, the court has reviewed the entire record to determine whether the correct legal standards were applied and whether the findings of fact are supported by substantial evidence.

1.  "The [ALJ] erred in finding no evidence of pinched nerves or back injury, contrary to neurologist report."  (*Id*.)

The ALJ found, "Claimant testified he also sustained an abdomen tear, further back injuries, and pinched nerves from the February 2013 accident.  . . .  There is no reference anywhere in the record to 'pinched' nerves, chronic muscle spasms, or other back injuries except strain."  (Doc. 7-3 at R.14.)  The court has reviewed Mr. Mitchell's medical records and finds no report, reference, or diagnosis of pinched or impinged nerves.[6]  Moreover, the record contains no report from a neurologist at all.

---

[6]"A pinched nerve occurs when too much pressure is applied to a nerve by surrounding tissues, such as bones, cartilage, muscles or tendons." PINCHED NERVE: DEFINITION,   http://www.mayoclinic.org/diseases-conditions/pinched-nerve/basics/ definition/con-20029601.

11

The court finds that the ALJ's Decision, finding no reference to pinched nerves in Mr. Mitchell's medical records, is supported by the court's review of the entire medical record.

> 2. The [ALJ] found claimant had no limitation or impairments, relying upon Dr. Waldrop's records, addressing <u>ankles</u> only, not the body as a whole; contrary to records finding severe degenerative changes and reports of additional [physicians'] exhibits included in the record. (Doc. 1 at 2 [emphasis in original].)

Apparently, Mr. Mitchell's contention, that the ALJ found he had no limitation or impairment, refers to the ALJ's finding in his Decision that "Dr. Waldrop [had] opined in October 2012, that claimant had no limitations and no impairments at this time." (Doc. 7-3 at R.21 [internal citation omitted].) In fact on October 23, 2012, Dr. Waldrop wrote, "It is my professional opinion that patient Michael Mitchell has no limitations or impairments at this time." (Doc. 7-8 at R.265.) Despite the ALJ's reference to Dr. Waldrop's October 2012 opinion, the ALJ did ***not*** find that Mr. Mitchell had no impairments or limitations. Indeed, the ALJ held:

> Though Dr. Waldrop opined in October 2012, that claimant had no limitations and no impairments at this time (Exhibit 7F, p.2) , claimant testified he cannot stand (initially, more than 15 minutes before having to get off his feet [and] later, 10-15 minutes before he has to sit down and get off his feet) or walk for periods of time (later, maybe 20 yards), cannot run, and has no stability on his feet. Claimant did not mention problems sitting when I asked, but when the representative asked about sitting, he stated he has to move around because his back bothers him. He has difficulty going up and down stairs, due to balance and reoccurring pressure on the arch of his feet; he has to be careful to put them down flat. Claimant stated Dr. Waldrop told him there would be a 6-month recuperation period for each surgery and that nothing else could be done; yet, when I pointed out that Dr. Waldrop's notes made no mention of this, he did not know why his complaints and reports were inconsistent with Dr. Waldrop's notes. Though note that February 9, 2012 treating notes show claimant was taken off crutches at that time with no indication of disability,

and March 20, 2012 notes reflect his report that he had been "very active" only a month after the surgery, claimant denied this and responded he may have said he had been "trying to move around" and be more mobile.  Claimant was not aware that Dr. Waldrop's notes express concerns about his complaints and that there was a "question mark" by them.  Though claimant told Dr. Rickless[7] "he was given a cane after that surgery which was on February 3, 2012," the claimant admitted at the hearing that Dr. Waldrop had not prescribed a cane at any time, only crutches, even though he appeared at the March 2012 consultative examination using a cane because he claimed was still having problems.  He did not tell the doctor that he needed a cane or that he had gotten one.  In any case, June 2012 and January 2013 physical examination[s] findings show absolutely no indication of musculoskeletal difficulty.  There are only very limited findings in June 2013, e.g., "[W]ell-developed and well-nourished in no acute distress,[" "N]o clubbing, cyanosis, or edema,[" "N]ormal peripheral pulse in the upper and lower extremities,[" "N]normal ranges of motion of all joints testing in the upper and lower extremities[. N]o erythema, warmth, swelling or joint deformities noted.["] Motor and sensory exam of the upper and lower extremities were normal (Exhibits 10F, p. 2 and 11F).

As for the opinion evidence, I accord significant, but not great weight to the claimant's treating surgeon, Dr. Waldrop's October 2012 opinion that claimant suffers no limitations or impairments (Exhibit 7F, p.2) as well as Dr. Rickless'[s] assessment that claimant should be able to sit, stand and walk for "reasonable periods of time", lifting and carrying would be limited to light to medium weights, can handle objects, with no limitations for hearing, speaking or traveling, and with no necessity for a four pronged cane (Exhibit 5F, p. 5). These opinions were helpful and the undersigned believes that the assessment highlighted above is generally consistent with their opinions.  Nonetheless, based on the undersigned's review of the entire record, including the claimant's testimony, there is evidence of greater limitation than they allowed.

(Doc. 7-3 at R.21 [footnote added].)

---

[7]Dr. Morton Rickless performed a consultative examination.  (*See* doc. 7-8 at R.252-55.)

Contrary to Mr. Mitchell's assertion, the ALJ specifically found he had the following impairments: "status post bilateral bunionectomy; status post bilateral arthrodesis with subtalar joint implant; degenerative joint and disc conditions of C5-6, C6-7; old thoracic fractures; spondylolisthesis at L5, and mild scoliosis." (*Id.* at R.13.) Moreover, he found that Mr. Mitchell had a number of limitations:

1. Limited to sitting for 3 hours continuously and at least 6 hours in an 8-hour workday.

2. Limited to standing/walking for 2 hours continuously and at least 6 hours in an eight-hour workday.

3. Limited to climbing stairs for no more than one-hour in an eight-hour workday.

4. No walking on uneven terrain, no crawling, and no climbing ladders, ropes, scaffolds and/or poles.

5. Limited to occasional climbing of ramps and occasional crouching and stooping.

6. Limited to frequent stooping and balancing.

7. Limited to occasional use of lower extremities for (a) pushing, (b) puffing, and (c) operation of foot controls.

8. Limited to frequent use of upper extremities to (a) reach in all directions, (b) push, (c) pull, and (d) handle.

9. Cannot work in extreme cold, at unprotected heights, and/or operate hazardous machinery.

10. Limited to occasional work subject to vibration.

11. Limited to frequent work in wetness, humidity, and extreme heat.

     12.  Limited to frequent operation of motorized vehicles.

(*See id*. at R.17-18.)  Also, as set forth above, the ALJ gave only "significant" – not "great" – weight to Dr. Waldrop's opinion specifically because "there is evidence of greater limitation than [he] allowed."  (*Id*. at R.21.)

     The ALJ's Decision discussed and considered all of the evidence of record.  He did not rely only on Dr. Waldrop's opinion; indeed, he specifically stated that he found greater limitations than those expressed by Dr. Waldrop or Dr. Rickless, the consultative examiner. The ALJ noted the record contained "evidence of moderate degenerative disc disease at C5-6 and C6-7, spondylolisthesis at L5, and mild scoliosis, . . . [and] severe degenerative changes of the thoracic spine, with old fractures."  (*Id*. at R.14 [internal citations omitted]; *see also* doc. 7-9 at R.291-93.)   Mr. Mitchell's contention that the ALJ relied on Dr. Waldrop's October 2012 opinion to find Mr. Mitchell had no limitations and no impairments is not supported by the record and/or the explicit language of the ALJ's Decision.

     The court has reviewed the entire administrative law record and it finds the decision of the Commissioner is supported by substantial evidence.  Therefore, the Commissioner's decision to deny Mr. Mitchell's claim for a period of disability and DIB will be affirmed.

## IV.  CONCLUSION

     Based on the reasons set forth above, the decision of the Commissioner, denying plaintiff's claim for a period of disability and DIB will be affirmed.  An Order affirming the

decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 11th day of July, 2016.

_Sharon Lovelace Blackburn_
SHARON  LOVELACE  BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE

16